**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SCOTT CHEATWOOD,

Defendant-Appellant.

No. 00-6401

(W. D. Oklahoma)

(D.C. No. CR-99-42-T)

**ORDER AND JUDGMENT** *

Before **HENRY** , **McKAY** , and **GIBSON** ,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable John R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

Scott Cheatwood was convicted after a jury trial of the following offenses: (1) conspiring to manufacture methamphetamine with the intent to distribute (a violation of 21 U.S.C. § 846); (2) possessing a firearm after conviction of a felony (a violation of 18 U.S.C. § 922(g)(1)); (3) possessing equipment and chemicals used to manufacture a controlled substance (a violation of 21 U.S.C. § 843(a)(6)); (4) possessing ephedrine/pseudoephedrine with the intent to manufacture methamphetamine (a violation of 21 U.S.C. § 841(d)(1)); (5) conspiring to effect an escape (a violation of 18 U.S.C. § 371); (6) aiding and abetting an escape attempt (a violation of 18 U.S.C. § 752(a)); and (7) possessing shotgun shell ammunition after a felony conviction (a violation of 18 U.S.C. § 922(g)(1)). The district court sentenced Mr. Cheatwood to concurrent terms of imprisonment of 360, 180, 240, 240, 60, 60, and 180 months, respectively, on each of these convictions. The court also ordered concurrent terms of supervised release—ranging from three to six years—following Mr. Cheatwood's release from incarceration

On appeal, Mr. Cheatwood challenges the sufficiency of the evidence supporting his conspiracy conviction and his conviction for possessing a firearm after a former felony conviction. Additionally, Mr. Cheatwood argues that all of his convictions should be vacated because the judge who was initially assigned to the case—the Honorable Vickie Miles-LaGrange—served as a prosecutor during

-2-

part of the investigation. Finally, Mr. Cheatwood advances several challenges based on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).

For the reasons set forth below, we are not convinced by Mr. Cheatwood's arguments. Accordingly, we affirm his convictions and sentences.


## I. BACKGROUND

Because the parties are familiar with the relevant facts, we summarize them only briefly, viewing the record in the light most favorable to the government. See United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). Between December 1995 and October 1997, Mr. Cheatwood's codefendants, Loy Chris Stevens and Ewing Vise, manufactured and distributed methamphetamine in the Oklahoma City area. Mr. Stevens and Mr. Vise typically engaged in two 'cooks' per month, which yielded from two ounces to two pounds of methamphetamine. The principal manufacturing sites were the two men's residences in the southwest part of Oklahoma City.

Methamphetamine was produced at an outbuilding behind Mr. Stevens' residence that witnesses called the "bunkhouse." Witnesses described this building as a small shed-like structure furnished with a day bed, television, chair, desk, and air conditioning.

The government's witnesses explained how the bunkhouse was used for the conspiracy's operations. Customers interested in purchasing methamphetamine would approach from the front of Mr. Stevens' property, through Mr. Stevens' residence, or through an alley and a gate in back of the residence. Customer traffic in and out of the bunkhouse area was constant, day and night. As many as twenty-five people per day purchased methamphetamine there.

At trial, the government presented testimony indicating that Mr. Cheatwood performed several roles in the enterprise: (1) he acted as a lookout when methamphetamine was manufactured, sold, and used at the bunkhouse; (2) at the direction of Mr. Stevens, he obtained ephedrine pills and other chemicals for Mr. Stevens' use in manufacturing methamphetamine; and (3) he assisted Mr. Stevens in carrying chemicals, glassware, and filters between the bunkhouse and Mr. Stevens' residence. In exchange for performing these jobs, Mr. Cheatwood was paid in-kind with one to three shots of methamphetamine per day.

Two government witnesses—Misty Word and Tiffany Davis—testified as to Mr. Cheatwood's possession of a firearm. They stated that, on August 27, 1997, while Mr. Stevens and Mr. Cheatwood were visiting the residence of one of Mr. Stevens' customers named "Ray-Ray," Mr. Cheatwood took a .380 pistol from his vehicle and gave it to Mr. Stevens. Mr. Stevens then used the pistol to shoot Clay Wilhoit, a former distributor, who was attacking Mr. Stevens' truck with a

baseball bat.

The government also presented testimony regarding Mr. Cheatwood's arrest on January 14, 1999, after he left Mr. Stevens' apartment. The government's evidence indicated that Mr. Cheatwood had the following items in his car: coffee filters containing ephedrine or pseudoephedrine, a bottle containing 133 ephedrine tablets, several large jars, tubing, and a gallon of toluene.

## II. DISCUSSION

### A. Sufficiency of Evidence Regarding Conspiracy Charge

Mr. Cheatwood first argues that the evidence is insufficient to support his conviction for conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846. In order to convict Mr. Cheatwood of this charge, the government was required to prove the following elements beyond a reasonable doubt: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997). Mr. Cheatwood focuses his challenge on the fourth element, arguing that, in light of his relatively minor role in the methamphetamine distribution scheme, the government failed to demonstrate the necessary interdependence between his activities and those of the other conspirators.

We examine the sufficiency of the evidence de novo. See Wilson, 107 F.3d at 778. Evidence is sufficient to support a conviction if the record, viewed in the light most favorable to the government, would allow a reasonable juror to find the defendant guilty beyond a reasonable doubt. See id.

This circuit's decisions have explained the element at issue here—the interdependence between conspirators—in varying terms. Some decisions state that "[i]nterdependence exists where each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal." Carter, 130 F.3d at 1440. Other decisions employ arguably broader language: "[I]f the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole, evidence of interdependence is present." United States v. Horn, 946 F.2d 738, 740-41 (10th Cir. 1991).

Mr. Cheatwood argues that he lacked "a common, illicit goal" with the other charged and uncharged members of the conspiracy to distribute methamphetamine. According to Mr. Cheatwood, his goal in performing the various acts surrounding the methamphetamine distribution scheme was merely to obtain drugs for his personal use. In contrast, the goal of the charged conspiracy was to manufacture and distribute methamphetamine for the purpose of making a profit.

To show this lack of a common purpose, Mr. Cheatwood points to a wide range of evidence. He notes that he did not share in the profits of the operation, did not manufacture methamphetamine himself, did not become involved with the other alleged leader of the conspiracy (Mr. Vise), and did not serve as a drug distributor for Mr. Stevens. Mr. Cheatwood also points to several gaps in the witnesses' testimony: he asserts that no witnesses identified him as present during any of the methamphetamine "cooks", that the police witnesses never identified him as being present at the bunkhouse, and that none of the witnesses could testify to an actual instance when he acted as a lookout or warmed them of police presence. Mr. Cheatwood adds that he did not even arrive in Oklahoma City until March 1997, well after the charged conspiracy had begun to operate.

In challenging the sufficiency of the evidence, Mr. Cheatwood also invokes cases involving individuals who have merely purchased drugs. For example, he notes that in United States v. Evans, 970 F.2d 663 (10th Cir. 1992), this circuit reversed a conviction of a defendant who was convicted of conspiracy to distribute cocaine on the basis of evidence that she made a purchase from one of the major figures in the operation, lent scales to two members of the conspiracy with the knowledge that they would use the scales to weigh cocaine, and purchased a small amount of cocaine from two other individuals. We stated that "a consumer generally does not share the distribution objective and thus would

not be part of the conspiracy to distribute crack cocaine." Evans, 970 F.2d at 669. (emphasis omitted).

We are not persuaded by Mr. Cheatwood's argument. As the government notes, the prosecution introduced evidence that Mr. Cheatwood performed several tasks that assisted Mr. Stevens in the operation of a scheme to manufacture and distribute methamphetamine. Witnesses testified that Mr. Cheatwood purchased chemicals necessary for the manufacture of methamphetamine, used his car to transport chemicals and equipment required for making methamphetamine, carried the chemicals between the bunkhouse and Mr. Stevens' residence from the bunkhouse, and occasionally served as a lookout for the operation.

The variety of tasks that Mr. Cheatwood performed distinguishes this case from those exonerating consumers of illegal drugs from conspiracy charges. See, e.g, United States v. Dekle, 165 F.3d 826, 829-30 (11th Cir. 1999); United States v. Brown, 872 F.2d 385, 390-91 (11th Cir. 1989). For example, in Brown, the Eleventh Circuit reversed a conspiracy conviction of a defendant who had consumed drugs, noting that "there was no evidence that the defendant turned around and sold this cocaine or performed any errands or collections for his supplier or otherwise assisted the ongoing 'business.'" Dekle, 165 F.3d at 830 (discussing Brown, 872 F.2d at 390) (emphasis added). Here, the government did produce such evidence.

Moreover, even if all of these activities arose out of Mr. Cheatwood's desire to satisfy his drug habit, that fact is not inconsistent with his sharing the goals of the conspiracy. The cases on which Mr. Cheatwood relies do not preclude a jury finding that he had more than one goal: satisfying his drug habit and doing so by undertaking the variety of tasks that Mr. Stevens asked him to do. See United States v. Heckard, 238 F.3d at 1222, 1230 (10th Cir. 2001) (concluding that the evidence supporting a conspiracy conviction was sufficient because the defendant's actions "benefitted not only himself, but also [other members of the conspiracy]") (emphasis added).

Finally, the testimony of certain witnesses as to Mr. Cheatwood's relatively minor role is not dispositive.[1] "The defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt." United States v. Johnston, 146 F.3d 785, 789 (10th Cir. 1998). In spite of the testimony regarding his minor role, the government's evidence provided the jury with adequate grounds for concluding that Mr. Cheatwood actively participated in the conspiracy.

---

[1] As Mr. Cheatwood notes, these witnesses describe him as "just an old man that hangs around just so someone will get him high," as "just doing whatever he could to get a shot of dope," and as just doing "flunky-type stuff." See Rec. vol. IX, at 1669; vol. VIII, at 1477, 1578.

We therefore conclude that the evidence is sufficient to support a jury finding that Mr. Cheatwood's activities were "essential and integral steps toward the realization of [the] common, illicit goal" of distributing methamphetamine, Carter, 130 F.3d at 1440, and that Mr. Cheatwood's activities "facilitated the venture as a whole." Heckard, 238 F.3d at 1230. Thus, the evidence is sufficient to support his § 846 conspiracy conviction.

### B. Sufficiency of Evidence Regarding Firearm Charge

Next, Mr. Cheatwood challenges the sufficiency of the evidence supporting his conviction for possessing a firearm after conviction of a felony (a violation of 18 U.S.C. § 922(g)(1)). In order to convict Mr. Cheatwood of this offense, the government was required to prove the following elements beyond a reasonable doubt: (1) that Mr. Cheatwood was previously convicted of a crime punishable by imprisonment exceeding one year; (2) that he thereafter knowingly possessed a firearm; and (3) that the possession was in or affecting interstate or foreign commerce. See United States v. Hishaw, 235 F.3d 565, 571 (10th Cir. 2000). Mr. Cheatwood challenges only the second element.

As we have noted, two witnesses—Misty Word and Tiffany Davis—testified that, on August 27, 1997, while Mr. Stevens and Mr. Cheatwood were visiting the residence of one of Mr. Stevens' customers named "Ray-Ray,"

-10-

Mr. Cheatwood took a .380 caliber pistol from his vehicle and gave it to Mr. Stevens. Mr. Cheatwood argues that Ms. Word and Ms. Davis are "highly suspect drug addicts" who agreed to cooperate with the government. Aplt's Br. at 23. He adds that there were significant gaps in their memories: Ms. Davis admitted that she did not recall how she arrived at Ray-Ray's house and Ms. Word appeared confused about whether Mr. Cheatwood retrieved the gun from the trunk of his car or from Ray-Ray's house. Also, both women admitted that they could have been using drugs at the time, and neither one of them was sure about the caliber of the weapon.

These deficiencies in the testimony of Ms. Word and Ms. Davis do not establish that the evidence was insufficient to support Mr. Cheatwood's § 922(g)(1) conviction. The fact that the witnesses were drug addicts does not preclude a reasonable juror's believing their testimony. See Tapia v. Tansy, 926 F.2d 1554, 1562 (10th Cir. 1991) ("Confused, self-contradicting testimony by a drug addict does not make the witness's testimony inherently incredible."); United States v. Martinez, 877 F.2d 1480, 1482 (10th Cir.1989) (impeachment of witness as a drug addict or as possessing emotional problems is a question of credibility for the jury). Significantly, the district court instructed the jury that it should view with great caution the testimony of drug addicts and informers who had reached agreements with the government. See Rec. vol. I doc. 353 (Instructions

-11-

19, 22, and 24).

Finally, Mr. Cheatwood's attorney vigorously cross-examined Ms. Word and Ms. Davis and noted these deficiencies in their testimony. The credibility of their testimony regarding Mr. Cheatwood's possession of a firearm was a factual question for the jury to determine and may not be revisited by this court on appeal. See United States v. Haslip, 160 F.3d 649, 653 (10th Cir. 1998). In light of their testimony and Mr. Cheatwood's opportunity to challenge their credibility through cross-examination, we conclude that the evidence is sufficient to support his conviction for violating 18 U.S.C. § 922(g)(1)).

## C.  Recusal

This case was initially assigned to the Honorable Vicki Miles-LaGrange. During the pretrial proceedings, the parties discovered that, while Judge Miles-LaGrange served as United States Attorney for the Western District of Oklahoma, the Bureau of Alcohol, Tobacco, and Firearms investigated and served a search warrant on one of Mr. Cheatwood's codefendants. At the time, the United States Attorney's Office had general supervisory responsibilities over this investigation.

Mr. Cheatwood filed a motion requesting Judge Miles-LaGrange to recuse. She granted the motion, and the case was transferred to The Honorable Ralph G. Thompson, who conducted the subsequent pretrial proceedings as well as the trial

and sentencing. Before Judge Miles-LaGrange granted the recusal motion, she ruled on the following motions filed by Mr. Cheatwood: (a) a motion to bifurcate; (b) a motion to suppress; (c) a motion for severance; and (d) a motion for exclusion of evidence pursuant to Fed. R. Evid. 404 (b). In each instance, Judge Miles-LaGrange denied the relief requested by Mr. Cheatwood.

Mr. Cheatwood now argues that Judge Miles-LaGrange should have recused when the case was first assigned to her. He maintains that the fact that she ruled on his four motions warrants a new trial.

Mr. Cheatwood's recusal argument is based on 28 U.S.C. § 455, which provides, in part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
>
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or

-13-

> expressed an opinion concerning the merits of the particular case in controversy;

(emphasis added).  Mr. Cheatwood contends that recusal was required under § 455(a) and (b)(3).

As the government notes, this circuit has read §455(b)(3) narrowly.  In <u>United States v. Gipson</u>, 835 F.2d 1323 (10th Cir. 1988), the court ruled that a district judge had not "participated as counsel" in a prior prosecution against defendant merely because he held the office of United States Attorney when the defendant was first prosecuted:

> [T]he word "participated" implies a higher degree of activity than simply being "of counsel." The latter association with a case arises simply because the prosecutor holds his office. One need do nothing to be "of counsel." "Participation" connotes activity, however. One cannot "participate" without doing <u>something.</u> Thus, simple logic dictates the conclusion that in reordering the language of the statute upon which recusal is based and distinguishing between situations in which recusal is mandated, Congress has implicitly drawn a line. In our opinion, before the presumption arises that a judge is in fact partial because of his past conduct as an attorney, <u>a party seeking disqualification must show that the judge actually participated as counsel. Mandatory disqualification then is restricted to those cases in which a judge had previously taken a part, albeit small, in the investigation, preparation, or prosecution of a case.</u>

835 F.2d at 1326.

Here, Mr. Cheatwood has made no showing that Judge Miles-LaGrange actually participated in the investigation.  Thus, he has failed to establish that she

-14-

was required to recuse under § 455 (b)(3) (second emphasis added).

That leaves § 455(a), which directs a judge to recuse if her "impartiality might reasonably be questioned." However, because Judge Miles-LaGrange did recuse when she was asked to do so, Mr. Cheatwood may only prevail if he can demonstrate that Judge Miles-LaGrange was required to recuse sua sponte when she was first assigned to the case.

On this point, Mr. Cheatwood has failed to provide any supporting authority. More importantly, even assuming that Judge Miles-LaGrange should have recused at the beginning of the case, her failure to do so is subject to harmless error analysis. See, e.g., Parker v. Connors Steel Co., 855 F.2d 1510, 1525 (11th Cir. 1988) (concluding that a district judge's failure to recuse because his impartiality might reasonably be questioned was harmless because the district court's summary judgment ruling was proper); In re Continental Airlines Corp., 901 F.2d 1259, 1263 (5th Cir. 1990) (same); see also United States v. Vespe, 868 F.2d 1328, 1342 (3d Cir. 1989) (stating that, if district court had abused its discretion in refusing to disqualify, the error would have been harmless because the district court's ruling on motion for judgment notwithstanding verdict was subject to plenary review on appeal). Here, Mr. Cheatwood has not argued that Judge Miles-LaGrange's rulings were incorrect on the merits or that another judge probably would have decided the motions differently. Thus, assuming, without

deciding, that Judge Miles-LaGrange erred in not recusing from the case when it was first assigned to her, we conclude that any such error was harmless.

### D. Apprendi Challenges

Mr. Cheatwood argues that his conspiracy conviction should be reversed because the superseding indictment did not specify the amount of methamphetamine involved in the offense. His argument is based on the Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."

Here, Mr. Cheatwood was sentenced within the statutory range for individuals with prior felony convictions who commit an offense involving unspecified amounts of drugs. See 21 U.S.C. § 841(b)(1)(C) (providing that a defendant who manufactures, distributes, or possesses with intent to distribute a schedule I or II controlled substance shall be sentenced to a term of imprisonment of not more than twenty years, or more than thirty years if previously convicted of a drug offense). As a result, under circuit precedent applying Apprendi, reversal of his conviction is not warranted. See United States v. Thompson, 237 F.3d 1258, 1262 (10th Cir. 2001) (concluding that reversal is not warranted under Apprendi if the defendant is sentence within the statutory range for offenses

involving unspecified drug amounts).[2]

In a related argument, Mr. Cheatwood contends that his § 922(g)(1) conviction for possession of a firearm is also invalid in light of Apprendi. He maintains that the government was required to allege his prior conviction in the superseding indictment and prove it to the jury beyond a reasonable doubt.

As Mr. Cheatwood concedes, this argument is inconsistent with the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998). See Aplt's Br. at 30 (acknowledging that, Almendarez-Torres, the Court held that "prior felony convictions are mere sentence enhancements, not elements of an offense and thus do not need to be charged in the indictment or proven beyond a reasonable doubt"). Almendarez-Torres is binding precedent, and we are bound to follow it. See United States v. Dorris, 236 F.3d 582, 587-88 (10th Cir. 2000). We therefore conclude that the government's failure to allege Mr. Cheatwood's prior conviction in the superseding indictment does not render it invalid.

---

[2] In fact, Mr. Cheatwood concedes this point. See Aplt's Br. at 28 (stating that "[t]he district court's decision was in accord with this Court's post-Apprendi rulings"). Mr. Cheatwood explains that he has advanced this argument for the purpose of preserving his right to seek Supreme Court review of this issue.

## V. CONCLUSION

For the reasons set forth above, we therefore AFFIRM Mr. Cheatwood's convictions and sentences.

Entered for the Court,


Robert H. Henry
United States Circuit Judge